IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:23-CR-105-TAV-DCP |
| | ) | |
| JOSEPH DIJON MANNING, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned for report and recommendation on Defendant Joseph Manning's Motion to Suppress [Doc. 17]. *See* 28 U.S.C. § 636(b). Defendant, who is charged with being a felon in possession of a firearm and ammunition, challenges the search of his business and his person on Fourth Amendment grounds [*Id*. at 1–2].

Officer Anthony Cummings of the Knox County Sheriff's Office ("KCSO") applied for a search warrant for Defendant's retail hemp business and for his person for evidence of the manufacture, sale, and possession of controlled substances; criminal conspiracy; money laundering; and simple possession or casual exchange of controlled substances. Knox County Criminal Court Judge Hector I. Sanchez issued the search warrant on June 8, 2023, and officers executed the search warrant at Defendant's business that day. Defendant was inside the business at the time of the execution of the search warrant and had a handgun in his waistband. Defendant informed the officers he was armed, and an officer secured the firearm.

Defendant seeks to suppress all evidence seized during the search of his business and from his person. He contends that Officer Cummings's affidavit fails to provide probable cause for the warrant's issuance because it does not establish a nexus between the business and

evidence of a crime, nor does it provide information on the reliability of presumptive THC testing conducted following controlled buys of vape pens[1] from the business. Defendant also argues that the affidavit fails to show that he knew the vape pens contained an unlawful THC level. The Government responds that the search warrant is supported by probable cause, the officers executed the search warrant in good faith, and the executing officers would have inevitably discovered the firearm on Defendant's person.

For the reasons discussed below, the undersigned finds the affidavit in support of the search warrant provides probable cause for the search of the business for evidence of drug trafficking but does not provide probable cause for the search of Defendant's person. Nevertheless, the executing officers searched Defendant in good faith pursuant to the search warrant and would have inevitably discovered the handgun on his person. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Suppress [Doc. 17] be denied.

## I.    BACKGROUND AND SUMMARY OF THE EVIDENCE

Defendant Manning is charged in a single-count Indictment with being a felon in possession of a firearm and ammunition on June 8, 2023 [Doc. 1 p. 1]. This charge arises out of the execution of a search warrant at Defendant's business My Canna Buds located at 1824 Magnolia Avenue, Knoxville, Tennessee, on June 8, 2023.[2]

---

[1]    The pleadings and affidavit in support of the search warrant variously refer to the products as vapes, vape pens, and vape cartridges.

[2]    A report by the Federal Bureau of Investigation ("FBI") dated June 23, 2023, and submitted by the Government in support of its response states that law enforcement also searched Defendant's residence pursuant to a search warrant on June 8, 2023, and seized three handguns, a shotgun, and two rifles from a safe and other "handguns in plain view" from the top of a wardrobe in Defendant's bedroom [Doc. 18-1 p. 1]. Defendant does not challenge the search of his residence [*See* Doc. 17].

On June 8, 2023, Knox County Criminal Court Judge Hector I. Sanchez issued a search warrant for the search of the Magnolia Avenue location of Defendant's business, his person, and an "unknown African American female" for evidence of the manufacture, sale, or possession of controlled substances; criminal conspiracy, money laundering, and simple possession or casual exchange of controlled substances [Doc. 17-1 pp. 1, 3].[3]  The search warrant states that probable cause for its issuance is based upon the affidavit of KCSO Officer Anthony Cummings [*Id*.].

In his six-and-one-half-page affidavit, Officer Cummings states that he has served as a Tennessee law enforcement officer and with the KCSO, where he works in the Organized Retail Crime Unit, since 2017 [*Id*. at 3].[4]  Officer Cummings states that Detective Tyler Ballard, a five-year veteran of the KCSO Narcotics Division, assisted him with this investigation [*Id*. at 4].  The affidavit relates that Joseph Dejon Williams[5] owns My Canna Buds, a "specialty hemp store" at 1824 Magnolia Avenue, Knoxville, Tennessee [*Id*.].  Officer Cummings states that using undercover informants, he conducted "three drug evidence buys . . . of Delta-9 Tetrahydrocannabinol (THC) concentrate," two from the Magnolia Avenue location of Defendant's business and one from another location of My Canna Buds on Clinton Highway[6]

---

[3]       The search warrant does not list the crimes under investigation, but it references the attached affidavit, which lists the crimes [Doc. 17-1 pp.1, 3].

[4]       Officer Cummings's affidavit contains lettered paragraphs in the section entitled "Affiant's Experience" and numbered bullets in the "CONCLUSIONS" section, but otherwise the paragraphs are not enumerated [Doc. 17-1].  The Court will cite to the paragraph letter or number when available and otherwise to the page number of the affidavit.

[5]       Joseph Dejon Williams is an alias of Defendant Joseph Dejon Manning [Doc. 18-1].

[6]       Defendant points out that the affidavit does not expressly state that he owns the My Canna Buds store on Clinton Highway.  Instead, it states that according to the Tennessee Department of Revenue, Defendant owns My Canna Buds LLC, which was formed on October 26, 2021, and uses the name "My Canna Buds" [Doc. 17-1 p. 4].  The primary address for My

3

[*Id*. at 5]. On all three occasions, the cashier retrieved the vape pens from behind the counter [*Id*.].

Prior to the first controlled buy, law enforcement received a tip that individuals had purchased vape pens containing more THC than legally permitted from My Canna Buds on Magnolia Avenue [*Id*.]. The KCSO Organized Retail Crime Unit conducted a controlled buy at the business on February 8, 2023, using a confidential informant [*Id*.]. The informant purchased a "Saucey Live Resin Delta-9" vape pen with $55 in undercover funds, which the cashier placed into the cash register [*Id*.]. The Tennessee Dangerous Drug Task Force tested "a sample of cannabis concentrate" from the vape pen with a "LightLab Cannabis Analyzer, which provides presumptive quantitative amounts of cannabinols contained in the sample" [*Id*.]. "The presumptive results of the test were that the sample contained 42.9% Delta-9 THC" [*Id*.]. Officer Cummings attached a certificate of analysis, dated February 23, 2023, to the affidavit, and the affidavit states that the February 8 controlled buy was not recorded[7] [*Id*. at 5, 19 (Attachment C)].

Regarding the second controlled buy, the affidavit states that law enforcement received a tip that Defendant's Magnolia Avenue business sold vape pens to underage individuals [*Id*. at 5]. On March 6, 2023, the KCSO Organized Retail Crime Unit conducted a second controlled buy at

---

Canna Buds LLC is the same as Defendant's residence [*Id*.]. The affidavit relates that Defendant owns both "My Canna Buds LLC and My Canna Buds" [*Id*. at 5]. Thus, the affidavit permits the logical inference that Defendant owns both locations of My Canna Buds.

[7]    Both parties assert that the February 8, 2023 purchase was recorded, despite the affidavit's assertion otherwise [Doc. 17 pp. 2–3; Doc. 18 p. 2 n.2]. The Court cannot consider this fact because it was not known to the issuing judge. *See United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (observing that when assessing probable cause, the reviewing court may consider only what is contained within the four corners of the supporting affidavit).

4

that location [*Id.*]. An underage informant purchased a Saucy Live Resin Delta-9 vape pen with $55 of undercover funds, and the cashier placed the money into the cash register without checking the informant's identification [*Id.*]. The Tennessee Dangerous Drug Task Force again tested a sample of cannabis concentrate from the vape pen with the LightLab Cannabis Analyzer [*Id.*]. "The presumptive results of the test were that the sample contained 7.4% Delta-9 THC" [*Id.*]. Officer Cummings attached the certificate of analysis, dated March 28, 2023, to the affidavit [*Id.* at 5, 21(Attachment D)]. The certificate is not signed, despite having a blank for the LightLab operator's signature, and lists the Delta-9 THC level of the sample as 69.1% [*Id.* at 21 (Attachment D)].[8]

The affidavit also describes a third controlled buy from the My Canna Buds on Clinton Highway [*Id.* at 5–6]. Acting on a tip that this store was selling vape pens to underage individuals, the KSCO Organized Retail Crime Unit sent an underage informant into the store with undercover funds on March 20, 2023 [*Id.*]. The underage informant purchased a Saucey Live Resin Delta-9 vape pen for $50 and the cashier placed the money in the cash register without checking the informant's identification [*Id.* at 6]. The Tennessee Dangerous Drug Task Force tested a sample of cannabis concentrate from the vape pen with the LightLab [*Id.*]. "The presumptive results of the test were that the sample contained 69.1% Delta-9 THC and 1.7% CBG" [*Id.*]. Officer Cummings attached a copy of the certificate of analysis, dated May 1, 2023, to the affidavit [*Id.* at 6, 23 (Attachment E)]. The certificate is not signed, despite having a blank

---

[8] The Court observes that the affidavit's statement of the Delta-9 THC level of 7.4% for the March 6, 2023 controlled buy [Doc. 17-1 p. 5] does not match the certificate of analysis from March 28, 2023 in Attachment D, which lists a Delta-9 THC level of 69.1% [Doc. 17-1 p. 21]. The Court concludes that the affiant likely mixed up the results from the March 6 and March 20 purchases.

for the LightLab operator's signature, and lists the Delta-9 THC level of the sample as 7.4% [*Id.* at 23].[9]

The affidavit lists nearly three pages of the affiant's experience from investigating and prosecuting drug conspiracies and "cases that involved large amounts of controlled substances" in state court [*Id.* at 6–8]. This experience relates to "drug dealers," which the affiant defines as a person who "purchases a larger quantity of drug[s] from a supplier, re-packages the drugs, then re-sales the smaller amounts at a premium" [*Id.* at ¶H]. The affiant's experience does not reference individuals conducting drug sales from a retail store [*See id.* at 6–8]. The affidavit relates that in the affiant's experience, "[d]rug dealers" have firearms in their possession, homes, and businesses to protect their property, contraband, and proceeds [*Id.* at ¶P]. The search warrant permits the seizure of "weapons including handguns, long guns, shot guns," and other weapons [*Id.* at 10 (Attachment A)].

Based on the above information, the affiant opines that Defendant, My Canna Buds, and an unknown African American female "knowingly acted in concert with known and unknown co-conspirators to distribute illegal drugs, specifically Delta-9 Tetrahydrocannabinol (THC)" [*Id.* at ¶1]. The affiant also believes that Defendant, the business, and the female possess and/or sell Delta-9 THC at the business and store the proceeds of illegal drug sales at the business [*Id.* at ¶¶4–5]. According to the affiant, Defendant, the business, and the female "have knowingly acted in concert with known and unknown co-conspirators to commit money laundering by concealing

_____

[9]    The affidavit's statement of the Delta-9 THC level of 69.1% for the March 20, 2023 controlled buy [Doc. 17-1 p. 6] does not match the certificate of analysis from May 1, 2023 in Attachment E, which lists a Delta-9 THC level of 7.4% [Doc. 17-1 p. 23]. As noted in footnote 7 above, the Court concludes that the affiant likely mixed up the results from the March 6 and March 20 purchases.

or disguising proceeds derived from distributing Delta-9 Tetrahydrocannabinol (THC)" [*Id.* at ¶8]. The affiant asserts that evidence of the possession and sale of Delta-9 THC and of money laundering will be found at the business [*Id.* at ¶¶6, 9].

Officers executed the search warrant at My Canna Buds on Magnolia Avenue on June 8, 2023 [Doc. 18-1]. According to an FBI report, when officers executed the search warrant, Defendant "was inside the business and armed with a handgun in his waistband" [*Id.*]. The report relates that Defendant "told SWAT Officer Gavin Egan that he was armed; at which point, Officer Egan secured the weapon" [*Id.*]. The FBI report states that Defendant has prior federal felony convictions [*Id.*].

On March 12, 2024, Defendant moved to suppress the evidence seized from the search of his business and his person [Doc. 17]. The Government responded in opposition on March 26, 2024 [Doc. 18]. The parties appeared before the undersigned on April 24, 2024, to present oral argument on the motion. Assistant United States Attorney Michael Gilmore appeared on behalf of the Government. Assistant Federal Defenders Sarah H. Olesiuk and Nakeisha C. Jackson represented Defendant Manning, who was also present. The parties relied on the copies of the search warrant and affidavit attached to Defendant's motion [Doc. 17-1], which Defendant reintroduced as Exhibit 1. Defendant presented a photograph of the type of vape pens allegedly sold in the controlled buys, in their original packaging, as a demonstrative aid.[10] The parties also relied on the FBI Report of June 23, 2023, which is attached to the Government's response [Doc. 18-1]. The Court heard the arguments presented by the parties and took the motion under advisement at the conclusion of the hearing.

---

[10] At the time defense counsel introduced the photograph, the Court noted it could not consider the photograph in relation to the sufficiency of the affidavit because it was not before the issuing judge. *See Brooks*, 594 F.3d at 492.

## II.    ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures.  In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Defendant challenges the sufficiency of probable cause for the issuance of the search warrant, raising three primary arguments:  First, he contends the affidavit fails to provide a nexus between the business or his person and the listed crimes [Doc. 17 p. 7].  Second, he argues the affidavit fails to demonstrate the reliability of the tests performed on samples from the vape pens [*Id*. at 8–9].  Third, in oral argument, Defendant asserted that the affidavit does not show that he or anyone at the business knew the vape pens contained an illegal amount of THC. The Government responds that the affidavit provides probable cause for a search warrant and the officers executing the search warrant relied on the warrant in good faith [Doc. 18 pp. 6–8, 10]. At the motion hearing, the Government also argued that the officers would have inevitably discovered the handgun on Defendant's person when they entered the business.

The undersigned has examined the issues raised by the parties and concludes that Officer Cummings's affidavit provides probable cause for the issuance of the search warrant for the business but not for Defendant's person.  The undersigned also finds that the executing officers acted in good faith reliance on the search warrant in searching Defendant's person and would have inevitably discovered the handgun on Defendant's person during the execution of the search warrant for the business.

8

## A. Probable Cause

Defendant contends that Officer Cummings's affidavit fails to provide probable cause for a search warrant because it does not establish (1) a nexus between the Defendant or his business and the alleged crimes, (2) the reliability of the presumptive testing, or (3) that Defendant or anyone at the business knew the commercial vape pens contained an illegal amount of THC [Doc. 17 pp. 7–9].

The Court begins by observing that an issuing judge's determination that probable cause exists is entitled to "'great deference.'" *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). This deferential standard promotes a preference for the use of search warrants as opposed to warrantless searches. *Id.* "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The "duty of a reviewing court[, in turn,] is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." *Id.* at 238–39. In making this determination, the Court considers only the information that was before the issuing judge—in other words, only what is contained within the four corners of the supporting affidavit. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971).

The Fourth Amendment protection against warrantless searches extends to "commercial premises" as well as homes, *Mancusi v. DeForte*, 392 U.S. 364, 367 (1968), but "[a]n expectation of privacy in a commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home," *New York v. Burger*, 482 U.S. 691, 700 (1987). An individual enjoys the protection of the Fourth Amendment in his or her place of business if "the

9

area was one in which there was a reasonable expectation of freedom from governmental intrusion." *DeForte*, 392 U.S. at 368. "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See v. Seattle*, 387 U.S. 541, 543 (1967); *see Burger*, 482 U.S. at 669 (holding that the owner of a business in a closely-regulated industry has a reduced expectation of privacy); *Dow Chemical Co. v. United States*, 476 U.S. 227, 236 (1986) (observing that "Dow plainly has a reasonable, legitimate, and objective expectation of privacy within the interior of its covered buildings"); *c.f., Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 388–89 (6th Cir. 1987) (holding defendant had no expectation of privacy in an auto showroom open to the public to browse and make purchases).

A search warrant issued in compliance with the Fourth Amendment must be based on "particularized facts" that demonstrate "'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Gates*, 462 U.S. at 244 n.13. Thus, the Supreme Court has observed that "probable cause is a flexible, common-sense standard," causing a person "of reasonable caution" to believe that the items are evidence of a crime. *Texas v. Brown*, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. *Gates*, 462 U.S. at 238. With these principles in mind, the Court turns to the search warrant in this case.

10

## 1. Nexus

Defendant argues that the affidavit fails to provide a nexus between the business or his person and evidence of a crime [Doc. 17 p. 7]. Specifically, he asserts that the affidavit does not support a finding that evidence of selling vape pens to underage individuals would be on the premises because hemp retailers are not legally required to maintain records of their customers' ages [*Id.*].

"To justify a search, the circumstances must indicate why evidence of illegal activity will be found 'in a particular place.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*). Probable cause requires a "'nexus between the place to be searched and the evidence sought.'" *Id.* (quoting *United States v. Van Shutters*, 828 F.3d 375, 336–37 (6th Cir. 1998)). "The connection between the residence and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *Carpenter*, 360 F.3d at 595). Assessing whether an affidavit establishes a nexus turns upon the facts of a particular case and requires examination of the totality of the circumstances. *Id.* The court must determine "'whether the [issuing judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Merriweather*, 728 F. App'x 498, 504 (6th Cir. 2018) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).

Here, ample nexus exists between Defendant's Magnolia Avenue business and drug possession and distribution because law enforcement conducted two controlled buys of vape pens containing an illegal amount of THC from that location. A controlled purchase of illegal drugs from the seller's *residence* provides a sufficient nexus between the location and the suspected criminal activity. *United States v. Moore*, 999 F.3d 993, 998 (6th Cir. 2021). "After

11

all, it is not much of a leap to infer that a suspect who has sold drugs from his home in the days preceding the issuance of a warrant will have evidence of that sale in his home." *Id.* (citing *United States v. McCoy*, 905 F.3d 409, 417 (6th Cir. 2018)). The same reasoning applies to the sale of illegal drugs from a business. *United States v. Kinzer*, No. 2:10–CR–84, 2011 WL 1792844, at *2, 4 (E.D. Tenn. Mar. 3, 2011) (finding "two controlled buys, standing alone, constituted adequate probable cause to believe that evidence of illegal drug trafficking would be found in defendant's business" within two to three weeks of the last controlled buy), *report & recommendation adopted by* 2011 WL 1793159 (E.D. Tenn. May 11, 2011).

Defendant raises the issue of staleness, pointing out that the search warrant was issued two and one-half months after the last controlled purchase on March 20, 2023, and over three months from the last purchase from the Magnolia Avenue location [*See* Doc. 17 pp. 8–9]. A "warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (internal quotations omitted). Four factors aid in determining whether information in an affidavit is stale:

> (1) "the character of the crime (chance encounter in the night or regenerating conspiracy?),"
>
> (2) "the criminal (nomadic or entrenched?),"
>
> (3) "the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)," [and]
>
> (4) "the place to be searched (mere criminal forum of convenience or secure operational base?)."

12

*Id.* at 573–74 (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). "[E]vidence of ongoing criminal activity will generally defeat a claim of staleness." *Id.* at 573 (internal quotation omitted).

Here, the affidavit states that vape pens containing an unlawful amount of THC were sold from behind the counter on three occasions at two locations of My Canna Buds. The controlled purchases occurred over a six-week period, and law enforcement had a tip regarding prior purchases of products containing an illegal amount of THC. The affidavit states that Defendant formed My Canna Buds LLC on October 26, 2021 [Doc. 17-1 p. 4]. Although vape pens are easily transferrable, the other factors show the sales were reoccurring and were from an established business. *See id.* at 573–74 (concluding that information supporting search of defendant's businesses and home was not stale because defendant was "entrenched" in these locations, which were essential to the charge of bank fraud through check kiting). Additionally, records such as invoices for the business's purchase of the Saucey Live Resin Delta-9 vape pens and receipts for their sale would be items of enduring value to the business and not perishable or readily transferrable. *See id.* (observing business records "could be reasonably expected to be kept . . . for long periods of time" (internal quotation omitted)). Accordingly, Officer Cummings's affidavit provides a nexus between Defendant's business and evidence of the sale of controlled substances.

In contrast, the Court finds the affidavit is devoid of a nexus between evidence of a crime and Defendant's person. The affidavit does not state that Defendant was present for any of the controlled buys. Instead, a cashier got the vape pens from behind the counter and placed the funds used to purchase the vape pens in the cash register. Even the affiant's experience, which relates primarily to typical drug trafficking, rather than the sale of controlled substances from a

13

retail business, provides no support for a belief that evidence of the crimes at issue here would be on Defendant's person [*See* Doc. 17-1 pp. 6–9].[11]  In oral argument, Government's counsel maintained that Defendant could have evidence of money laundering, such as invoices or receipts, on his person.  The affidavit, however, provides no support for this assertion.  Accordingly, the undersigned finds that the affidavit fails to provide probable cause for the search of Defendant's person.

## 2. Reliability of Presumptive Drug Tests

Defendant also argues that the issuing judge's reliance on the presumptive THC test results in the affidavit was "objectively unreasonable" because the affidavit lacks information on the reliability of the LightLab Cannabis Analyzer or on how the samples of cannabis concentrate were collected, maintained, and tested [Doc. 17 pp. 8–9].  He asserts that the affidavit does not provide an error rate for the LightLab Cannabis Analyzer, nor are the attached certificates of analysis signed [*Id*. at 8].  He contends that the affidavit contains no information on the training of the person who extracted the sample or conducted the test and does not indicate the chain of custody for the samples, although the samples were not tested until weeks after the controlled buys [*Id*.].  At oral argument, defense counsel argued that when this missing information is considered as a part of the totality of the circumstances, the affidavit fails to provide probable cause for the search warrant.

---

[11]    In the affiant's experience, derived from investigating drug trafficking conspiracies and cases involving large amounts of controlled substances, only photographs and firearms are found within a drug dealer's "possession," as well as in his residence and business [Doc. 17-1 ¶¶O–P].  Here, Defendant, a business owner, is not shown to be a "drug dealer" within the affiant's use of that term [*See id*. at ¶H ("Every drug dealer utilizes a similar business plan in that a lower-level drug dealer purchases a larger quantity of drug[s] from a supplier, re-packages the drugs, the re-sales the smaller amounts at a premium.")].

The Government responds that while the alleged missing information on testing may be relevant at a trial on whether the vape pens contained an unlawful amount of THC, it is not necessary for probable cause to support a search warrant for the business [Doc. 18 p. 8]. Instead, it contends the issuing judge properly relied on the presumptive test results from the Tennessee Dangerous Drug Task Force as part of the totality of the circumstances supporting probable cause [*Id.*].

The Court evaluates the sufficiency of probable cause based upon what the affidavit contains, rather than what it lacks. *Moore*, 999 F.3d at 998. Here, the affidavit states that the three Saucey Live Resin Delta-9 vape pens were tested by the Tennessee Dangerous Drug Task Force with a LightLab Cannabis Analyzer. The affidavit informs the issuing judge that the LightLab Cannabis Analyzer "provides presumptive quantitative amounts of cannabinols contained in the sample" [Doc. 17-1 p. 5]. For each of the three vape pens, the Tennessee Dangerous Drug Task Force removed a sample of cannabis concentrate from the pen and tested the sample with the LightLab Cannabis Analyzer. The affidavit provides the percentage of Delta-9 THC contained in each of the three samples and attaches the certificate of analysis for each of the three tests.[12] This information considered as a part of the totality of the

---

[12] The Court finds the fact that the affidavit switches the Delta-9 THC percentages for the March 6 controlled buy and the March 20 controlled buy is not inimical to probable cause because the issuing judge could infer that Defendant owned both locations of My Canna Buds and could review the certificates of analysis. Additionally, all three samples far exceeded the legal limit of Delta-9 THC. *See* 7 U.S.C. § 1639o(1) (defining hemp as any part of the cannabis plant and "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [("THC")] concentration of not more than 0.3 percent on a dry weight basis"); *Northern Va. Hemp & Agriculture LLC v. Virginia*, 1:23-cv-1177, 2023 WL 7130853, at *1 (E.D. Va. Oct. 30, 2023) ("Marijuana and any part of the plant *Cannabis sativa L.* with a delta-9 THC concentration above 0.3 percent are Schedule I controlled substances." (citing 21 U.S.C. §§ 812, Schedule I, (c)(10), (17)) (appeal filed Nov. 15, 2023).

circumstances, including that the vape pens were kept behind the counter and the name of the product advertised that it contained "Delta-9" provide a "'fair probability that criminal evidence will be found in the place to be searched." *See Moore*, 999 F.3d at 996; *see also United States v. Stevenson*, 43 F.4th 641, 645 (6th Cir. 2022) ("Probable cause is 'is not a high bar.'" (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

Defendant argues that a search warrant is properly issued "where the 'circumstances are detailed[,]' and 'where reason for crediting the source of the information is given'" [Doc. 17 p. 8 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965) (observing that when the issuing judge finds probable cause, a reviewing court "should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner")]. To be sure, "a probable cause finding may not be based on 'information too vague and from too untested a source.'" *Rieves v. Smyrna*, 959 F.3d 678, 696 (6th Cir. 2020) (quoting *Wong Sun v. United States*, 371 U.S. 471, 482 (1963)) (finding no qualified immunity for prosecutors who prosecuted hemp distributors or officers who arrested them when the investigating agency had previously informed the prosecutors that it could not test the THC percentages in the products and officers were briefed on same). In *Rieves*, our appellate court observed that "[a] reasonable officer would know that the mere presence of CBD in products, without any indication as to the products' origin or THC percentage, did not provide probable cause for violations of Tennessee's controlled-substance laws." *Id*. at 697 (observing that under Tennessee law, industrial hemp containing less than 0.3% THC is not illegal). Such is not the case here, where the affidavit provided the specific percentages of THC in the samples from the vape pens based upon testing by the Tennessee Dangerous Drug Task Force.

16

### 3. Evidence of Mens Rea

In oral argument, Defendant asserted that the totality of the circumstances in the affidavit did not provide probable cause for the search warrant because the affidavit contained no evidence that Defendant or anyone at the business knowingly possessed or sold vape pens with an illegal concentration of THC.

Probable cause to arrest the property owner or occupant is not a prerequisite to establish probable cause to search the property. *United States v. Wright*, 2:22-CR-20233-TBG-KGA-3, 2024 WL 224343, at *6 (E.D. Mich. Jan. 22, 2024) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 559 (1978)).[13] "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher*, 436 U.S. at 556; *United States v. Manufacturers Nat. Bank of Detroit*, 536 F.2d 699, 703 (6th Cir. 1976) ("The necessity that there be findings of probable cause as to two factors the commission of a crime and the location of evidence affords protection from unreasonable searches and seizures, which are the only ones forbidden by the Fourth Amendment."). In other words, the search of a premises is "independent of, rather than ancillary to, arrest," and the Fourth Amendment does not require "that the occupant of the place to be searched must himself be implicated in misconduct." *Zurcher*, 436 U.S. at 558–59 (internal quotation omitted). Accordingly, Officer Cummings's affidavit need not show probable cause to arrest Defendant for drug trafficking (much less that he knowingly engaged in drug trafficking) to provide probable

---

[13]    Equally true is the reciprocal principle: "the mere 'fact that there is probable cause to arrest a person for a crime does not automatically give police probable cause to search his residence or other area in which he has been observed for evidence of that crime.'" *Wright*, 2024 WL 224343, at *6 (quoting *United States v. Savoca*, 739 F.2d 220, 225 (6th Cir. 1984)).

cause to search his business or even his person. Thus, the affidavit's failure to show Defendant had a particular mental state is not fatal to probable cause.

The affidavit must show probable cause both that a crime was committed and that evidence of the crime will be found at a specific location. *See McPhearson*, 469 F.3d at 524. To the extent that Defendant argues that the affidavit fails to establish the commission of a crime because it does not show that Defendant or anyone knew that the vape pens contained an illegal amount of THC, the undersigned also disagrees. Here, the affidavit contains information that individuals purchased vape pens containing an illegal controlled substance from the Defendant's business. The name of the vape pens, Saucey Live Resin Delta-9, emphasizes that the pens contain THC. The vape pens were sold from behind the counter in all three controlled buys. Moreover, the sale of the vape pens containing an illegal amount of THC was ongoing as evidenced by the tip that preceded the three controlled buys, which occurred over a six-week period. While these facts on their own may be insufficient to provide probable cause, when considered with the totality of the circumstances, particularly the three controlled buys of vape pens containing a THC level that far exceeded the legal amount permitted for hemp products, the affidavit provides probable cause that a crime was committed.

Here, the Court finds that the affidavit provides probable cause to believe that evidence of the possession and sale of controlled substances (vape pens containing an illegal amount of THC) would be located at the Magnolia Avenue business. As discussed above, however, the affidavit did not provide probable cause to believe that evidence of a crime would be found on Defendant's person. The firearm forming the basis for the charged offense was seized from the Defendant's person. Thus, the Court turns next to whether the firearm should be suppressed.

18

**B. Good Faith Exception**

The Government argues that even if the affidavit was insufficient, the firearm seized from Defendant should not be suppressed because the officers executed the search warrant for Defendant and his business in good faith [Doc. 18 pp. 8–10]. "Under the good-faith exception, evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective' will not be suppressed." *United States v. Neal*, No. 2:22-cv-20083-JPM-1, 2023 WL 1107895, at *1 (W.D. Tenn. Jan. 30, 2023) (quoting *United States v. Leon*, 468 U.S. 897, 905 (1984)); *see also United States v. Herring*, 555 U.S. 135, 141–42 (2009) (rejecting automatic exclusion of evidence and, instead, asking whether exclusion will provide "appreciable deterrence"). The good-faith exception is employed because "'[p]enalizing the officer for the [judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.'" *United States v. White*, 874 F.3d 490, 505–06 (6th Cir. 2017) (quoting *Leon*, 468 U.S. at 921). Thus, "only police conduct that evidences a 'deliberate, reckless, or grossly negligent' disregard for Fourth Amendment rights may 'outweigh the resulting costs'" to society from suppression of evidence. *United States v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013) (quoting *Herring*, 555 U.S. at 144).

"[T]he 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Dauphinais*, No. 22-2141, 2024 WL 751653, at *6 (6th Cir. Feb. 23, 2024) (quoting *Leon*, 468 U.S. at 922 n.23). "'Some modicum of evidence, however slight[, ]between the criminal activity at issue and the place to be searched'" will support an officer's good-faith belief in the existence of probable cause. *McCoy*, 905 F.3d at 416 (quoting *White*, 874 F.3d at 496). Thus, only when the affidavit is "so lacking in indicia of

19

probable cause as to render official belief in its existence entirely unreasonable" will the search fall outside the good-faith exception and the evidence be suppressed. *Neal*, 2023 WL 1107895, at *1 (quoting *Leon*, 468 U.S. at 923); *see also Dauphinais*, 2024 WL 751653, at *7 (observing that of the four circumstances when the good faith exception does not apply, only the lack of indicia of probable cause or the "bare bones" affidavit exception was relevant). Such a "bare bones affidavit is one that 'states suspicions, beliefs, or conclusions without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)); *see also Wright*, 2024 WL 224343, at *11 (The good faith exception does not apply "where the information in an application was stale, entirely uncorroborated, or failed to provide even a 'remote' link between criminal activity and the target location.")

An affidavit is not facially insufficient or "bare bones" when it contains a detailed description of an extensive investigation. *Id.* at *7–8. Here, Officer Cummings's affidavit is six and one-half pages long and contains eight paragraphs describing the investigation [Doc. 17-1 pp. 3– 9). The affidavit describes three controlled buys occurring at two locations of My Canna Buds [*Id.* at 5–6]. Certificates of analysis for the testing conducted on each vape pen purchased in the controlled buys are attached to the affidavit [*Id.* at 19, 21, 23]. As discussed above, the affidavit provides ample nexus between the Magnolia Avenue location of My Canna Buds and the sale of illegal controlled substances. The affidavit also clearly links Defendant to the business. It states that Defendant is the owner of My Canna Buds LLC, which he formed on October 26, 2021, and that his residential address is listed as the address for the business in the Tennessee Department of State Division of Business Services [*Id.* at 4]. Although the Court finds the three pages of the affiant's experience in this case are not particularized as to the sale of

illegal substances from a retail business, the affidavit provides a connection between Defendant and the business and a connection between the business and drug trafficking.

At the motion hearing, defense counsel argued that errors in the affidavit, such as referring to the unknown individual both as a female and a male, stating the first controlled buy was not recorded, and including unsigned certificates of analysis, show that the affiant acted recklessly and not in good faith. However, none of these errors are material to probable cause. Moreover, if this information was stated correctly in the affidavit, it would have enhanced probable cause or had a neutral effect, as in the gender of the unknown individual. Accordingly, the Court finds these errors evidence negligence on the part of the affiant and do not affect the good faith of the *executing officers* in relying on the facially detailed affidavit.

Thus, the undersigned finds that the officers executed the search warrant for Defendant's person in good faith, and the firearm seized from his person should not be suppressed.

**C. Inevitable Discovery**

During oral argument, the Government asserted that the officers did not need a search warrant to enter Defendant's business, which was open to the public. It contended that once the officers legally entered, they would have seen the firearm in Defendant's waistband and, knowing Defendant was a felon, could have seized the firearm incident to his arrest. In support of this alternative basis for the firearm's seizure, the Government relied on an FBI report dated June 23, 2023, and noted that the report states that Defendant announced to the executing officers that he was armed. Defendant countered that the report does not state the gun was visible in his waistband and that his statement that he was armed could have been in response to questions by the officers.

21

"'[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source.'" *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022) (quoting *Utah v. Strieff*, 579 U.S. 232, 238 (2016)); *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995). This exception to the exclusionary rule "applies when there is an independent, untainted investigation that was bound to uncover the same evidence" or "when other compelling facts demonstrate that discovery was inevitable." *Cooper*, 24 F.4th at 1091. To apply this doctrine, the Court examines whether, absent the constitutional violation, the search: (1) could have occurred through "lawful means," and (2) would have occurred, in that it "inevitably" would have taken place. *Id*. at 1093–94. Important to the analysis is whether routine police practices apply or the existence of "evidence of police officers' intentions." *Id*. at 1094. The government must show that the evidence would have been discovered by a lawful means by a preponderance of the evidence. *Kennedy*, 61 F.3d at 497.

Here, the Court finds that the officers were lawfully on the premises executing a valid search warrant for the business. The Court agrees with Defendant that the report does not state that the firearm in Defendant's waistband was in plain view. Nor does it state that the officers executing the warrant knew Defendant was a felon, which would allow them to recognize the firearm as illegal. However, officers executing a search warrant may detain individuals present incident to the execution of the search warrant. *Michigan v. Summers*, 452 U.S. 692, 705 (1981); *United States v. Vite-Espinoza*, 342 F.3d 462, 467 (6th Cir. 2003). Detention is appropriate to prevent flight, to control the scene thus permitting the orderly execution of the warrant, and to "minimiz[e] the risk of harm to the officers." *Summers*, 452 U.S. at 702–03; *Vite-Espinoza*, 342 F.3d at 467. Law enforcement's ability to detain an individual incident to the execution of a search warrant is categorical and "does not require law enforcement to have particular suspicion

that an individual is involved in criminal activity or poses a specific danger to the officers." *Bailey v. United* States, 568 U.S. 186, 193 (2013).

When a person is detained, officers may conduct a limited frisk of the individual's outer clothing "for the protection of the police officer, where [the officer] has reasonable suspicion to believe he is dealing with an armed and dangerous individual[.]"  *United States v. Wilson*, 506 F.3d 488, 492 (6th Cir. 2007)); *see United States v. Bohannon*, 225 F.3d 615, 617 (6th Cir. 2000) (affirming constitutionality of stop and subsequent frisk of individuals rapidly approaching residence where the execution of a search warrant was in progress).  According to the FBI report, Defendant announced to the officers that he was armed [Doc.18-1 p. 1].  At that point, the officers reasonably believed Defendant was armed and could lawfully secure the firearm for their safety during the execution of the search warrant.  The officers could also seize it pursuant to the search warrant for the business, which authorized the seizure of firearms.  Although Defendant contends that his announcement that he was armed could have been in response to questioning by the officers, he does not explain why such a question would contravene the Fourth Amendment.

In summary, the officers would have inevitably discovered the firearm during the execution of the search warrant for the business even if they did not have a search warrant for Defendant's person.

## IV.    CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the undersigned finds that law enforcement properly searched Defendant's business pursuant to a valid search warrant but that the search warrant for his person was not based upon probable cause.  The Court also finds that the exclusionary rule should not be applied to suppress the

firearm seized from Defendant's person because the officers executed the search warrant in good faith and would have inevitably discovered the firearm without a search warrant for Defendant's person. Accordingly, the undersigned respectfully **RECOMMENDS** that that the District Judge deny Defendant's Motion to Suppress [Doc. 17].[14]

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[14] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to appeal the District Court's order. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 555 U.S. 1080 (2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). "[T]he district court need not provide *de novo* review where objections [to this report and recommendation] are [f]rivolous, conclusive, or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).

24