UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,        )
                                 )
            Plaintiff,           )
                                 )
v.                               )        No.:   3:23-cr-105-TAV-DCP-1
                                 )
JOSEPH DEJON MANNING,            )
                                 )
            Defendant.           )

**MEMORANDUM OPINION AND ORDER**

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on May 10, 2024 [Doc. 25]. The R&R addresses defendant's motion to suppress [Doc. 17]. The government responded [Doc. 18], and Judge Poplin held a motion hearing on April 24, 2024 [Doc. 20]. Judge Poplin then issued the R&R [Doc. 25], recommending that the Court deny defendant's motion to suppress [Doc. 17].

After the Court twice extended the deadline for defendant to file objections to the R&R [Docs. 28, 30], defendant filed his objections on June 24, 2024 [Doc. 31], and the government responded [Doc. 32]. On July 8, 2024, defendant filed a pro se reply to the government's response [Doc. 34] and a pro se motion to substitute counsel [Doc. 33]. On July 16, 2024, Judge Poplin held a hearing on the latter motion, appointed defendant new counsel, and ordered his new counsel to take appropriate action in addressing defendant's pro se reply [*See* Docs. 36, 38]. On July 24, 2024, defense counsel filed a motion to adopt defendant's pro se reply [Doc. 39].

This matter is now ripe for review. *See* E.D. Tenn. L.R. 7.1(a). First, the Court will **GRANT** defendant's motion to adopt his pro se filing [Doc. 39]. And second, for the reasons that follow, defendant's objections [Doc. 31] are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 25] in whole and **DENIES** defendant's motion to suppress [Doc. 17].

## I. Background

Defendant is charged in a single-count indictment with being a felon in possession of a firearm and ammunition [Doc. 1, p. 1]. This charge arises out of the execution of a search warrant at defendant's business, My Canna Buds, located at 1824 Magnolia Avenue in Knoxville, Tennessee, on June 8, 2023.

The Court presumes familiarity with the background and summary of the evidence set forth in the R&R [*See* Doc. 25, pp. 2–7]. As neither party has objected to this portion of the R&R, the Court reincorporates it in part below:

> On June 8, 2023, Knox County Criminal Court Judge Hector I. Sanchez issued a search warrant for the search of the Magnolia Avenue location of Defendant's business, his person, and an "unknown African American female" for evidence of the manufacture, sale, or possession of controlled substances; criminal conspiracy, money laundering, and simple possession or casual exchange of controlled substances [Doc. 17-1 pp. 1, 3]. The search warrant states that probable cause for its issuance is based upon the affidavit of KCSO Officer Anthony Cummings [*Id.*].
>
> In his six-and-one-half-page affidavit, Officer Cummings states that he has served as a Tennessee law enforcement officer and with the KCSO, where he works in the Organized Retail Crime Unit, since 2017 [*Id.* at 3]. Officer Cummings states that Detective Tyler Ballard, a five-year veteran of the KCSO Narcotics Division, assisted him with this investigation [*Id.* at 4]. The affidavit relates that Joseph Dejon Williams owns My Canna Buds, a "specialty hemp store" at 1824 Magnolia Avenue, Knoxville, Tennessee [*Id.*]. Officer Cummings states that using undercover informants, he conducted

"three drug evidence buys . . . of Delta-9 Tetrahydrocannabinol (THC) concentrate," two from the Magnolia Avenue location of Defendant's business and one from another location of My Canna Buds on Clinton Highway [*Id.* at 5]. On all three occasions, the cashier retrieved the vape pens from behind the counter [*Id.*].

Prior to the first controlled buy, law enforcement received a tip that individuals had purchased vape pens containing more THC than legally permitted from My Canna Buds on Magnolia Avenue [*Id.*]. The KCSO Organized Retail Crime Unit conducted a controlled buy at the business on February 8, 2023, using a confidential informant [*Id.*]. The informant purchased a "Saucey Live Resin Delta-9" vape pen with $55 in undercover funds, which the cashier placed into the cash register [*Id.*]. The Tennessee Dangerous Drug Task Force tested "a sample of cannabis concentrate" from the vape pen with a "LightLab Cannabis Analyzer, which provides presumptive quantitative amounts of cannabinols contained in the sample" [*Id.*]. "The presumptive results of the test were that the sample contained 42.9% Delta-9 THC" [*Id.*]. Officer Cummings attached a certificate of analysis, dated February 23, 2023, to the affidavit, and the affidavit states that the February 8 controlled buy was not recorded [*Id.* at 5, 19 (Attachment C)].

Regarding the second controlled buy, the affidavit states that law enforcement received a tip that Defendant's Magnolia Avenue business sold vape pens to underage individuals [*Id.* at 5]. On March 6, 2023, the KCSO Organized Retail Crime Unit conducted a second controlled buy at that location [*Id.*]. An underage informant purchased a Saucey Live Resin Delta-9 vape pen with $55 of undercover funds, and the cashier placed the money into the cash register without checking the informant's identification [*Id.*]. The Tennessee Dangerous Drug Task Force again tested a sample of cannabis concentrate from the vape pen with the LightLab Cannabis Analyzer [*Id.*]. "The presumptive results of the test were that the sample contained 7.4% Delta-9 THC" [*Id.*]. Officer Cummings attached the certificate of analysis, dated March 28, 2023, to the affidavit [*Id.* at 5, 21(Attachment D)]. The certificate is not signed, despite having a blank for the LightLab operator's signature, and lists the Delta-9 THC level of the sample as 69.1% [*Id.* at 21 (Attachment D)].

The affidavit also describes a third controlled buy from the My Canna Buds on Clinton Highway [*Id.* at 5–6]. Acting on a tip that this store was selling vape pens to underage individuals, the KSCO Organized Retail Crime Unit sent an underage informant into the store with undercover funds on March 20, 2023 [*Id.*]. The underage informant purchased a Saucey Live Resin Delta-

9 vape pen for $50 and the cashier placed the money in the cash register without checking the informant's identification [*Id.* at 6]. The Tennessee Dangerous Drug Task Force tested a sample of cannabis concentrate from the vape pen with the LightLab [*Id.*]. "The presumptive results of the test were that the sample contained 69.1% Delta-9 THC and 1.7% CBG" [*Id.*]. Officer Cummings attached a copy of the certificate of analysis, dated May 1, 2023, to the affidavit [*Id.* at 6, 23 (Attachment E)]. The certificate is not signed, despite having a blank for the LightLab operator's signature, and lists the Delta-9 THC level of the sample as 7.4% [*Id.* at 23].

The affidavit lists nearly three pages of the affiant's experience from investigating and prosecuting drug conspiracies and "cases that involved large amounts of controlled substances" in state court [*Id.* at 6–8]. This experience relates to "drug dealers," which the affiant defines as a person who "purchases a larger quantity of drug[s] from a supplier, re-packages the drugs, then re-sales the smaller amounts at a premium" [*Id.* ¶ H]. The affiant's experience does not reference individuals conducting drug sales from a retail store [*See id.* at 6–8]. The affidavit relates that in the affiant's experience, "[d]rug dealers" have firearms in their possession, homes, and businesses to protect their property, contraband, and proceeds [*Id.* ¶ P]. The search warrant permits the seizure of "weapons including handguns, long guns, shot guns," and other weapons [*Id.* at 10 (Attachment A)].

Based on the above information, the affiant opines that Defendant, My Canna Buds, and an unknown African American female "knowingly acted in concert with known and unknown co-conspirators to distribute illegal drugs, specifically Delta-9 Tetrahydrocannabinol (THC)" [*Id.* ¶ 1]. The affiant also believes that Defendant, the business, and the female possess and/or sell Delta-9 THC at the business and store the proceeds of illegal drug sales at the business [*Id.* ¶¶ 4–5]. According to the affiant, Defendant, the business, and the female "have knowingly acted in concert with known and unknown co-conspirators to commit money laundering by concealing or disguising proceeds derived from distributing Delta-9 Tetrahydrocannabinol (THC)" [*Id.* ¶ 8]. The affiant asserts that evidence of the possession and sale of Delta-9 THC and of money laundering will be found at the business [*Id.* ¶¶ 6, 9].

Officers executed the search warrant at My Canna Buds on Magnolia Avenue on June 8, 2023 [Doc. 18-1]. According to an FBI report, when officers executed the search warrant, Defendant "was inside the business and armed with a handgun in his waistband" [*Id.*]. The report relates that Defendant "told SWAT Officer Gavin Egan that he was armed; at which point, Officer Egan secured the weapon" [*Id.*]. The FBI report states that Defendant has prior federal felony convictions [*Id.*].

[*Id.* at 2–7 (footnotes omitted)].

In his motion to suppress, defendant argued, in relevant part, that the warrant affidavit failed to provide probable cause for a search warrant because it does not establish the reliability of the presumptive THC testing of the vape pen samples under the totality of the circumstances [Doc. 25, pp. 9, 14 (citing Doc. 17, pp. 7–9)]. In particular, he argued that the issuing magistrate judge's reliance on the presumptive THC test results in the affidavit was objectively unreasonable because the affidavit lacks information about the reliability of the LightLab Cannabis Analyzer, how the samples of cannabis concentrate were tested, the qualifications of the individual who tested the samples, and the chain of custody of the samples given that the samples were not tested until weeks after the controlled buys [*Id.* at 14 (citing Doc. 17, pp. 8–9)]. He further observed that the attached LightLab certificates (the "Certificates") are unsigned [*Id.*].

The government argued, in turn, that even if the affidavit was insufficient to establish probable cause for a search warrant, the firearm seized from defendant should not be suppressed because officers executed the search warrant in good faith [*Id.* at 19 (citing Doc. 18, pp. 8–10)]. Defendant argued that several errors and omissions contained in the affidavit show that the affiant acted recklessly and not in good faith [*Id.* at 25].

Upon consideration of the record and the parties' arguments, Judge Poplin has recommended that defendant's motion to suppress be denied. Judge Poplin determined that the affidavit in support of the search warrant provides probable cause for the search of defendant's business for evidence of drug trafficking, but it does not provide probable cause for the search of defendant's person [*Id.* at 2]. Nevertheless, Judge Poplin concluded that

the executing officers searched defendant in good faith pursuant to the search warrant and would have inevitably discovered the handgun on his person [*Id.*].

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which a defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, the motion to suppress, the government's response, defendant's objections and his pro se reply, all in light of the applicable law.

Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute"). Each objection to a magistrate judge's recommendation should describe how the analysis is wrong, why it was wrong, and how *de novo* review warrants a different result on a particular issue. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A general objection that merely restates an argument previously presented or simply voices a disagreement with a magistrate judge's suggested resolution "has the same effects as would a failure to object." *Austin v. Comm'r of Soc. Sec.*, No. 1:19-cv-2380, 2021 WL 1540389, *4 (N.D. Ohio, Apr. 19, 2021) (citations omitted); *see also United States v. Dawson*, No. 4:19-cr-206, 2020 WL 109137, *1 (N.D. Ohio, Jan. 9, 2020) ("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs.").

## III. Analysis

Defendant objects to the following conclusions in the R&R: (1) the affidavit in support of the search warrant provided probable cause to search his business for evidence of drug trafficking; (2) the officers executing the search warrant would have inevitably discovered the handgun on defendant's person; and (3) the officers executing the search warrant searched defendant's person in good faith [Doc. 31, p. 1].

Defendant's second objection is a general one. Other than stating his disagreement with the conclusion that executing officers would have inevitably discovered the handgun, defendant does not point to or explain the source of any error or mistake in the R&R's reasoning. *See Howard*, 932 F.2d at 509. Accordingly, the Court finds that this objection is not a valid one, as it lacks the specificity required to trigger *de novo* review of this issue. *See id.*; *see also Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.").

Defendant's remaining objections fall into three categories: the legal regime for hemp products, probable cause analysis, and the good faith exception to the warrant requirement. Before turning to each objection in further detail, the Court will briefly summarize these arguments. First, defendant makes several arguments under the section header in his brief entitled "The [R&R] misapprehends the legal regime for hemp products and draws inaccurate conclusions regarding the warrant" [Doc. 31, p. 3]. Next, the second section header in his brief indicates that he takes issue with the R&R's consideration of the

reliability of the Certificates in finding that the affidavit was not so lacking in indicia of probable cause such that the good faith exception applies [*Id.* at 4–8]. The case law he cites in this section further suggests that defendant's objection is limited to the R&R's application of the good faith exception. In carefully reviewing his arguments, however, it appears that defendant also may be indirectly objecting to the R&R's probable cause analysis related to the reliability of the Certificates [*See id.* (conflating the reliance of the issuing magistrate and executing officers on the Certificates)]. Regardless, he largely presents the same substantive argument on both issues.

The Court also has considered defendant's pro se reply [Doc. 34]. Defendant attempts to clarify arguments made by his former counsel during the R&R process and repeats some of the omissions from the search warrant that his former counsel observe in his objections. *See* E.D. Tenn. L.R. 7.1(c) ("A reply brief shall not be used to reargue the points and authorities included in the opening brief, but shall directly reply to the points and authorities contained in the answering brief."). The gist of his argument in his reply appears to be that the good faith exception should not apply in this case [*Id.* at 3, 7–9 ("With the aforementioned, the defendant asserts that . . . the good faith exception" does not apply")]. He also argues that the affiant "deliberately, with gross negligence and a very high reckless disregard for the truth, submitted false documents—i.e., the LightLab reports—as attachments to his affidavit for a search warrant" [*Id.* at 3, 7–8]. Specifically, defendant asserts that the dates on the Certificates are false. In support, he states that the affiant represents that the LightLab tests were conducted the same day as the controlled

buys, but the dates on the Certificates do not match the dates on which the controlled buys were conducted [Doc. 34, pp. 2, 4–6].

The Court will now consider defendant's proper objections in turn, weaving in argument from his pro se reply where appropriate. As the following sections demonstrate, each of these objections is unpersuasive and will be overruled.

### A. The R&R Does Not Misapprehend the Legal Regime for Hemp Products

Defendant first argues that the R&R misapprehends the legal regime for hemp products and as a result, it draws inaccurate conclusions about the warrant [*Id.* at 3–4]. He begins by noting a primary difference between hemp products, like the packaged vape products here, and illicit narcotics [*Id.*]. Unlike illicit narcotics, there is a lawful supply chain for hemp products. Additionally, he observes that the vape products bear no explicit signs of illegality and require laboratory testing to determine whether the THC concentration is higher than 0.3%, which would render the products illicit controlled substances under Tennessee law [*Id.*].

Further, because the vape pens were prepackaged, manufacturer-sealed products, according to defendant, this indicates that any purported unlawful substance was added earlier in the supply chain by growers or wholesalers. As a result, he argues that "we should [not] presume that [his] business is going to house the wares of the drug trade" merely because his business sold hemp products [*Id.* ("Nothing in the governing law commands us to treat the distributor of a recently legalized substance as being presumed to be associated with unlawful conduct")]. Rather, he laments that his business "is more likely

to be the victim of receiving adulterated or deceptively labelled products than to be a link in the drug distribution chain" [*Id.*].

In light of these differences, defendant argues that the R&R should not have analyzed the circumstances of this case under the "tradition[al] rubric of 'drug dealers,'" and that "the officer's experience with traditional drug distribution networks is simply inapplicable" in this case in "seek[ing] to create a nexus to drug trafficking" [*Id.*].

Respectfully, defendant's arguments are difficult to follow. *See Miller*, 50 F.3d at 380 (explaining that objections to any part of an R&R "must be clear enough to enable the district court to discern those issues that are dispositive and contentious"). This could be because he fails to pinpoint specific portions of the R&R with which he disagrees or believes there is an error. Or it could be attributed to the fact that he argues at a high level of generality about the qualitative differences between hemp products and illicit substances, which he believes warrants a different legal analysis than what appears in the R&R. The problem with his overarching argument is that he fails to point to legal authority that would support his position or explain why, *in light of applicable law*, *de novo* review of the R&R should yield a different result.

Upon careful review of the record and the R&R, there is no indication that it was "presumed" that defendant's business was "associated with unlawful conduct" merely because it sold hemp products [*Id.* at 4]. As Judge Poplin observed [Doc. 25, p. 16], this case is readily distinguishable from *Rieves v. Smyrna*, 959 F.3d 678, 696 (6th Cir. 2020), where prosecutors and law enforcement made such improper presumption in arresting and prosecuting hemp distributors. In that case, the investigating agency informed prosecutors

that it could not test the THC concentration of the subject hemp products, which meant that the legality of the products could not be determined. *Id.* at 687, 689, 696–97, 699 (finding that prosecutors and officers lacked probable cause to arrest the hemp distributors because prosecutors and officers knew or should have known that they had no evidence to determine the products' legality). In determining that prosecutors and officers were not entitled to qualified immunity, the Sixth Circuit reasoned that "[a] reasonable officer would know that the mere presence of CBD in products, without any indication as to the products' origin or THC percentage, did not provide probable cause for violations of Tennessee's controlled-substance laws." *Id.*

In accordance with Judge Poplin, the Court finds *Rieves* instructive here in resolving defendant's objections. Unlike *Rieves*, the warrant affidavit and Certificates provide specific percentages of THC in the samples from three vape pens based on testing conducted by the Tennessee Dangerous Drug Task Force using the LightLab Cannabis Analyzer. Defendant does not dispute these facts [Doc. 31, p. 7]. Although defendant takes issue with the reliability of the Certificates, primarily because they were unsigned,[1] the affidavit and the Certificates further show that the THC concentration in the vape pens far exceeded the legal limit of Delta-9 THC. Accordingly, the Court finds little merit in defendant's argument that it was presumed that his business engaged in unlawful conduct merely because it sold hemp products.

---

[1] The Court takes up this argument in the following sections.

Moreover, the R&R's citation to *Rieves* further discounts defendant's argument that it misapprehends the legal regime of hemp products. To the contrary, it shows that the R&R properly analyzed the facts of this case in light of applicable law. And, for what it is worth, defendant does not acknowledge *Rieves* as binding authority or the R&R's reliance on it in his objections.

Finally, to the extent defendant has argued otherwise, it does not appear that the R&R relies on the affiant's experience in finding the affidavit provides a nexus between defendant's business and evidence of the sale of controlled substances. To the contrary, the R&R recognizes the affiant's experience relates primarily to typical drug trafficking, rather than the sale of controlled substances from a retail business [Doc. 25, pp. 13–14, 20]. And in finding that the good faith exception applies, the R&R states that "the affiant's experience in this case [is] not particularized as to the sale of illegal substances from a retail business" [*Id.*]. This further demonstrates that defendant's objections are not specific enough such that they borderline improper general objections. *See Howard*, 932 F.2d at 509.

As reflected above, the Court is unpersuaded by defendant's arguments. As he has failed to point to and explain an error in the R&R's reasoning, his objections are **OVERRULED**.

### B. Probable Cause

Defendant next objects to the R&R's probable cause analysis. More specifically, he argues that the issuing magistrate's reliance on the Certificates was unreasonable [Doc. 31, pp. 4–8].

"Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) (citations and internal punctuation omitted). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). (citation omitted). It "is not a high bar" and "is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* (internal quotation marks omitted). "For an affidavit to establish probable cause, [Sixth Circuit] precedent requires the affidavit to contain a sufficient nexus between the evidence sought and the place to be searched." *United States v. Davis*, 970 F.3d 650, 665–66 (6th Cir. 2020).

"A magistrate's determination of probable cause is afforded great deference by the reviewing court," *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001), and the "warrant must be upheld as long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing," *United States v. Lee*, 48 F. App'x 184, 186 (6th Cir. 2002) (citation omitted, cleaned up). The Supreme Court has often recognized that affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation." *Illinois v. Gates*, 462 U.S. 213, 235 (1983). So "[t]echnical requirements of elaborate specificity" are not required in evaluating probable cause in a search warrant. *Id.* In determining probability, officers and magistrates may rely on "common-sense conclusions about human behavior." *Wesby*, 583 U.S. at 58 (citation omitted); *see also United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc)

("Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out . . . .").

In finding that the warrant affidavit and its attachments provide probable cause that evidence of the possession and sale of controlled substances would be located at defendant's business on Magnolia Avenue, the R&R correctly observes, in light of applicable law, that the Court is to evaluate probable cause "based upon what the affidavit contains, rather than what it lacks" [Doc. 25, pp. 14–16, 18]. As to the reliability of the Certificates, the R&R states the following:

> Here, the affidavit states that the three Saucey Live Resin Delta-9 vape pens were tested by the Tennessee Dangerous Drug Task Force with a LightLab Cannabis Analyzer. The affidavit informs the issuing judge that the LightLab Cannabis Analyzer "provides presumptive quantitative amounts of cannabinols contained in the sample" [Doc. 17-1 p. 5]. For each of the three vape pens, the Tennessee Dangerous Drug Task Force removed a sample of cannabis concentrate from the pen and tested the sample with the LightLab Cannabis Analyzer. The affidavit provides the percentage of Delta-9 THC contained in each of the three samples and attaches the certificate of analysis for each of the three tests. This information considered as a part of the totality of the circumstances, including that the vape pens were kept behind the counter and the name of the product advertised that it contained "Delta-9" provide a "'fair probability that criminal evidence will be found in the place to be searched."

[Doc. 25, pp. 15–16]. The R&R also observes that all three samples far exceeded the legal limit of Delta-9 THC [*Id.* at 15 n.12].

Defendant does not object to the above facts that are stated in the warrant affidavit. Rather, as defendant argued throughout the R&R process, he maintains that it was unreasonable for the issuing magistrate to rely on the Certificates as evidence of probable

cause, and he points out several omissions from the affidavit and supporting documents that he believes the R&R "glosse[d] over" [Doc. 31, pp. 7–8].

One of those omissions is that the Certificates were unsigned [*Compare id.* at 4–7; Doc. 34, p. 6 *with* Doc. 17, p. 8; Doc. 26, p. 9]. Another is that the affiant never identifies the operator of the LightLab Analyzer and fails to attest to or describe the operator's qualifications and familiarity with the device [*Compare* Doc. 31, pp. 6–7; Doc. 34, p. 6 *with* Doc. 17, p. 8; Doc. 26, pp. 8–9].[2] Defendant represents that the disclaimer on the Certificates states that the test results are not valid if the Certificate is not signed and are accurate only if the sample was properly prepared by the operator [*Compare* Doc. 31, pp. 6, 8 *with* Doc. 17, p. 8; Doc. 26, pp. 9–10]. Without a signature, defendant contends that the test results are meaningless [Doc. 31, p. 8].

Next, defendant states that the affidavit implies that the testing was completed immediately following the controlled buy of each vape pen, but he questions why the Certificates are dated weeks after each controlled buy [Doc. 31, p. 7; *see also* Doc. 34, pp. 2–5]. Moreover, defendant observes that the affidavit lacks information about the storage

---

[2]    In his pro se reply, defendant argues that this "restricts the defense from cross examination of the signatory and/or operator which is a direct violation of the Confrontation Clause" [Doc. 34, pp. 6–7]. While defendant's concern may be an appropriate one for trial, it is immaterial to the Court's resolution of his objections and suppression motion. *See United States v. Burke*, 345 F.3d 416, 426 (6th Cir. 2003) ("[T]he Supreme Court has repeatedly explained that '[t]he right to confrontation is basically a trial right.'") (quoting *Barber v. Page*, 390 U.S. 719, 725 (1968)).

He further observes that the affidavit does not include identifying information about the vape pens purchased from his business, such as the serial number, model number, photograph, or receipt of purchase, to show that they matched the products tested by the LightLab Analyzer [*Id.* at 6].

or custody of each sample between each controlled buy and testing [*Compare* Doc. 31, p. 7; Doc. 34, pp. 2–5 *with* Doc. 17, pp. 8–9]. Defendant then opines whether the unsigned Certificates are the vape pens that were seized from defendant's business [Doc. 31, p. 7].[3]

As an initial matter, defendant made similar, if not the same arguments during the R&R process, both in his suppression brief and at the suppression hearing, which Judge Poplin considered and addressed in the R&R [*See* Doc. 17, pp. 8–9; Doc. 26, pp. 8–10, 12 ("I think a magistrate judge should have asked for a signed certificate and the qualifications of the person doing the testing if it was going to make a complete probable cause analysis"); Doc. 25, pp. 14–16, 21]. *See Dawson*, 2020 WL 109137, at *1 ("[T]he Court is under no obligation to review *de novo* objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs."). Ultimately, Judge Poplin was not persuaded by his arguments and found that such omissions were not relevant to the probable cause analysis [*See* Doc. 25, pp. 14–16, 21].

Defendant now argues that the R&R glosses over the omissions in the warrant affidavit and its attachments, and he continues to fixate on what is missing from those documents. But the Sixth Circuit has instructed that the Court do the opposite of what defendant requests. That is, the Court should "value the affidavit as we might those around

---

[3] In his pro se reply, defendant represents that the affidavit expressly states that the tests were performed the same day as each controlled buy [Doc. 34, p. 4]. According to defendant, the fact that the certificates are dated weeks after the controlled buys "verifies" that the certificates do not represent the testing of the vape products purchased from his business [*Id.* at 4–5]. He then goes even further and appears to argue, in the context of the good faith exception, that the Certificates are "false documents" and are "misdated, unsigned and unauthenticated" [*Id.* at 2–3, 7–8].

us . . . [and] ask what good qualities it contains, not 'what it lacks.'" *United States v. Sanders*, 106 F.4th 455, 463 (6th Cir. 2024) (quoting *Allen*, 211 F.3d at 975) (explaining that "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added")). And the Court may "not [to] scrutinize a warrant affidavit in a 'hypertechnical' or 'line-by-line' manner." *Id.*

The R&R's probable cause analysis complies with this instruction from the Sixth Circuit. It considers the affidavit and its attachments holistically and concludes that their redeeming qualities provide ample probable cause to search defendant's business.

The R&R also addresses defendant's arguments about the reliability of the Certificates. In doing so, the R&R distinguishes the facts of this case from *Rieves* [Doc. 25, p. 16], which the Court finds instructive in overruling defendant's objections. Here, and unlike *Rieves*, the affiant, the issuing magistrate, and the executing officers did not rely on the mere presence of hemp in the vape pens in applying for, signing off on, and executing the search warrant. *See* 959 F.3d at 696. If that were the case, any such reliance would have been unreasonable. Instead, the warrant affidavit here states that the Tennessee Dangerous Drug Task Force tested a sample of cannabis concentrate from three vape pens using the LightLab Cannabis Analyzer, which is described as "provid[ing] presumptive quantitative amounts of cannabinols contained in the sample" [Doc. 17-1, p. 5]. Additionally, the affidavit and Certificates, the latter of which are unsigned, show that the samples tested by the Tennessee Dangerous Drug Task Force from each of the three vape pens far exceeded the legal limit of Delta-9 THC. *See, e.g.*, *Simms v. McDowell*, No. 4:08CV–60–M, 2009 WL 3160353, at *5 (W.D. Ky. Sept. 25, 2009) (positive field test

described in warrant application provided sufficient probable cause for warrant); *Lamping v. Walraven*, 30 F. App'x 577, 580 (6th Cir. 2002).

Defendant does not dispute any of these facts [Doc. 31, p. 7]. In the totality of all these circumstances, including that the vape pens were retrieved from behind the counter of defendant's business, and judging the affidavit for its good qualities and not for what it lacks, the Court finds that the magistrate had a substantial basis for concluding that a search of defendant's business would uncover evidence of a crime.

As to the omissions cited by defendant, the Court concludes that they do not detract from the probable cause analysis, as such elaborate specificity is not required. *See Gates*, 462 U.S. at 235 (explaining that search warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation," such that "[t]echnical requirements of elaborate specificity" are not required in evaluating probable cause in a search warrant). Defendant's assertion that the Certificates are meaningless without a signature does not persuade the Court, as it is "not [to] scrutinize a warrant affidavit in a 'hypertechnical'" manner. *See Sanders*, 106 F.4th at 463.

Neither does the fact that operator of the LightLab Analyzer was not identified or that the operator's qualifications or the specific method by which the operator tested the samples were not included in the affidavit. As the government noted in its underlying brief opposing defendant's motion, defendant appears to confuse the standard of probable cause with the *Daubert* standard for admitting expert testimony at trial, authenticating documents at trial, and potential lines of cross examination at trial [Doc. 18, p. 8; Doc. 26, p. 19]. Defendant overlooks the fact that the affiant states that he enlisted the Tennessee Dangerous

Drug Task Force to test the samples from each vape pen, and that the affiant identifies and describes the LightLab Cannabis Analyzer as the devise used to test each sample. And defendant does not identify any authority that would suggest that the magistrate, supplied with such information, should have asked for the qualifications of the individual with the Tennessee Dangerous Drug Task Force who tested the samples or any further information about testing before finding there was probable cause to issue the search warrant.

As to defendant's argument about the dates of testing [Doc. 34, pp. 2–3, 7–8]. after the first controlled buy, the affiant states, "I contacted the Tennessee Dangerous Drug Task Force and requested to have someone come out with a LightLab Cannabis Analyzer" [Doc. 17-1, p. 5]. After the second and third controlled buys, the affiant states that the "Tennessee Dangerous Drug Task Force tested a sample of cannabis concentrate from the vape pen" [*Id.* at 5–6]. Defendant reads the forgoing as the affiant explicitly stating that the LightLab tests were conducted same day as the controlled buys [Doc. 34, pp. 2, 4–6].

The Court does not draw the same conclusion from the affidavit and finds defendant's argument unavailing. A fair, common-sense reading of the affidavit does not suggest that the affiant states that the tests were conducted on the same day as the controlled buys. *See Wesby*, 583 U.S. at 58.

For the reasons above, the Court finds that the totality of the circumstances provides a substantial basis for the issuing magistrate's finding of probable cause. Defendant's objections to the R&R's probable cause finding is **OVERRULED**.

### C.    Good Faith

The exclusionary rule precludes the use of evidence obtained in violation of the Fourth Amendment in criminal proceedings against a defendant who was subject to an illegal search, *Illinois v. Krull*, 480 U.S. 340, 347 (1987), but if the evidence was "obtained in objectively reasonable reliance" on the invalidated search warrant and in good faith, it should not be suppressed, *United States v. Leon*, 468 U.S. 897, 922 (1984).  An officer relying on a search warrant does not act in objectively reasonable good faith when (1) the warrant was facially deficient, (2) the affidavit supporting the warrant was knowingly or recklessly false, (3) the magistrate judge failed to act in a neutral and detached manner, or (4) the warrant lacked probable cause to such an extent that it was unreasonable for officers to rely on it.  *United States v. Woodall*, No. 23-5989, 2024 WL 3221395, at *1 (6th Cir. June 28, 2024) (citing *United States v. Helton*, 314 F.3d 812, 819, 824 (6th Cir. 2003)).

Defendant next objects to the R&R's conclusion about the application of the good faith exception [Doc. 31, pp. 4–6].  At issue appears to be the second and forth exceptions.  Defendant argues that it was objectively unreasonable for the executing officers to rely on the Certificates, which he believes offer no indicia of probable cause [*Id.* at 4].  As he argued at the suppression hearing, he maintains that the affiant acted recklessly and not in good faith and that officers could not have harbored an objectively reasonable belief in the existence of probable cause [*Compare* Doc. 26, pp. 11–12 *with* Doc. 31, p. 5; Doc. 34, pp. 3, 7–8].  In his pro se reply, defendant goes even further in arguing that the affiant knowingly submitted false documents—i.e., the Certificates [*Id.*].

Even if the warrant affidavit is lacking in probable cause, Judge Poplin concluded, in light of applicable law, that the good faith exception applies and found the following:

> Here, Officer Cummings' affidavit is six and one-half pages long and contains eight paragraphs describing the investigation [Doc. 17-1 pp. 3–9]. The affidavit describes three controlled buys occurring at two locations of My Canna Buds [*Id.* at 56]. Certificates of analysis for the testing conducted on each vape pen purchased in the controlled buys are attached to the affidavit [*Id.* at 19, 21, 23]. As discussed above, the affidavit provides ample nexus between the Magnolia Avenue location of My Canna Buds and the sale of illegal controlled substances. The affidavit also clearly links Defendant to the business. It states that Defendant is the owner of My Canna Buds LLC, which he formed on October 26, 2021, and that his residential address is listed as the address for the business in the Tennessee Department of State Division of Business Services [*Id.* at 4]. . . . [T]he affidavit provides a connection between Defendant and the business and a connection between the business and drug trafficking.
>
> At the motion hearing, defense counsel argued that errors in the affidavit, such as referring to the unknown individual both as a female and a male, stating the first controlled buy was not recorded, and including unsigned certificates of analysis, show that the affiant acted recklessly and not in good faith. However, none of these errors are material to probable cause. Moreover, if this information was stated correctly in the affidavit, it would have enhanced probable cause or had a neutral effect, as in the gender of the unknown individual. Accordingly, the Court finds these errors evidence negligence on the part of the affiant and do not affect the good faith of the *executing officers* in relying on the facially detailed affidavit.

[*Id.* at 20–21 (emphasis in original)].

### i. Bare Bones Affidavit

Defendant first argues that the warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Leon*, 468 U.S. at 923. Much like his objection to the probable cause analysis, the gist of his

argument is that the LightLab reports were unreliable [Doc. 31, pp. 6–8].[4]  In most respects, his *Leon*-based challenge is indistinguishable from his challenge to the probable cause finding; however, the two standards should not be conflated.  *Sanders*, 106 F.4th at 469. *Leon*'s bare bones exception concerns the officer's objective blameworthiness, while probable cause focuses on the probability that evidence of a crime will be found in a particular place.  *Id.* at 470.  Accordingly, defendant's "critique of the finer points of the affidavit, in other words, are the province of probable cause, not *Leon* good faith."  *See id.*

An affidavit is bare bones if it "states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'"  *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)).  "Put another way, bare bones affidavits nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied."  *Sanders*, 106 F.4th at 468 (internal citations omitted).  By "contrast, an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched.'"  *White*, 874 F.3d at 496–97 (*quoting United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004)).  Where a reviewing court is "'able to identify in the averring officer's affidavit some connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal

---

[4]  As indicated above, to the extent that defendant objects to both the probable cause and good faith analysis, his arguments, which the Court details extensively in the prior section, are the largely the same.  For the sake of brevity, the Court will not recite all of defendant's arguments.

activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *Id.* at 497 (quoting *Laughton*, 409 F.3d at 749–50).

Here, even if the affidavit supporting the search warrant fails to establish probable cause, the affidavit provides objectively reasonable grounds for executing officers to believe that the search warrant was properly issued. *See Carpenter*, 360 F.3d at 595. The information in the affidavit is not entirely uncorroborated such that it lacks for veracity, reliability, or basis of knowledge. *See id.* at 497. It details the place to be searched—defendant's business—and connects it to defendant as owner and at least minimally to illegal activity—i.e., the possession and sale of controlled substances containing unlawful concentrations of THC [Doc. 17-1, p. 4]. *See id.* at 594–96.

Specifically, eight paragraphs of the warrant affidavit describe the investigation in which the affiant personally participated, including a tip about the sale of vapes containing unlawful concentrations of THC from defendant's business [Doc. 17-1, pp. 3–9]. But it does not end there. As a result of the tip, including others indicating that underage people were buying vapes from defendant's business, officers conducted three controlled buys at two locations of defendant's business. Officers purchased three Saucey Live Resin Delta-9 vape pens, which the cashier retrieved from behind the counter. Again, it does not end there. The affiant enlisted the Tennessee Dangerous Drug Task Force after the first controlled buy to test a sample of cannabis concentrate from the vape pen using the LightLab Cannabis Analyzer, which, according to the affiant, provides presumptive quantitative amounts of cannabinols in the sample. The Tennessee Dangerous Drug Task Force tested samples from all three vapes following the controlled buys. The presumptive

results of each test included in the affidavit show that the samples each contained THC concentrations that far exceeded the legal limit under Tennessee law. And the affiant attaches the Certificates from each of the tests conducted by the Tennessee Dangerous Drug Task Force.

Based on these facts, the Court cannot conclude that there were "no reasonable grounds for believing that the warrant was properly issued." *Helton*, 314 F.3d at 824 (citing *Leon*, 468 U.S. at 923). Nor can it be seriously contended the warrant affidavit and its attachments are completely devoid of facts or consist solely of suspicions, beliefs, or conclusions such that executing officers' reliance on the issuing magistrate's probable cause determination was reckless. *Cf. Laughton*, 409 F.3d at 746–49, 751 ("The application simply listed the address of the premises to be searched, a summary of the deputy's professional experience, and two acontextual allegations against Laughton."); *United States v. Hython*, 443 F.3d 480, 488–89 (6th Cir. 2006) ("The South Fifth Street transaction is not dated, and the affidavit contains no indication of ongoing investigation, subsequent or previous controlled buys, or further surveillance of the address or the female supplier.").

Defendant's continuing attack on the reliability of the Certificates does not change this conclusion. His primary argument is that the results in the Certificates are meaningless because they are unsigned [Doc. 31, p. 8]. The Court was unpersuaded by this argument in the context of his probable cause objection and is particularly unpersuaded by it in the context of his *Leon* challenge. This is because the Sixth Circuit reserves *Leon*'s bare bones exception to "obvious" cases, and, even considering the omissions cited by defendant, this case is not one of such cases. *See Sanders*, 106 F.4th at 470 (citing *United States v. Reed*,

24

993 F.3d 441, 452 (6th Cir. 2021)). And defendant fails to point to any legal authority that tends to indicate that this is one of those obvious cases.

For the reasons above, defendant's objections on this issue are **OVERRULED**.

### ii.     Franks

Defendant's argument about the knowing or reckless inclusion of false information in the warrant affidavit and its attachments [Doc. 31, pp. 4–5; Doc. 34, pp. 6–7] is based on *Franks v. Delaware*, 438 U.S. 154 (1978). The Court uses a two-part test to evaluate claims of false statements contained in an affidavit. First, the defendant must "make[ ] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit[.]" *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (quotations omitted). And second, the defendant must "prove[ ] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Id.* Where an affidavit contains knowing or reckless falsities, "the *Leon* good faith exception does not apply to save" it. *United States v. West*, 520 F.3d 604, 612 (6th Cir. 2008). The defendant shoulders a heavy burden in arguing that evidence should be excluded under this exception. *Sanders*, 106 F.4th at 470.

Here, defendant has not made a substantial showing that the affiant knowingly or recklessly misled the issuing magistrate by attaching unsigned Certificates to the warrant affidavit.[5] The affiant's omission represents no more than an incident of "'isolated'

---

[5]  As explained previously, the Court finds unpersuasive defendant's argument that the certificates of analysis were false or the dates included in them were incorrect.

negligence," *United States v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013), not the "knowing . . . falsity" or "reckless disregard for the truth" that the exclusionary rule is designed to deter, *United States v. Hammond*, 351 F.3d 765, 773–74 (6th Cir. 2003); *see also id.* at 774 (distinguishing "the remarkable inaccuracies" in the affidavit at issue, which "reflect[ed], at the very least, a reckless disregard for the truth," from "case[s] in which an officer made a small error in the affidavit"). Moreover, defendant does not point to any evidence in the record indicating that the affiant knowingly or consciously harbored doubt about the accuracy of his warrant affidavit. *See United States v. O'Neill*, 94 F.4th 531, 539–40 (6th Cir. 2024) (recognizing that an officer must, at a minimum, consciously harbor doubt about the accuracy of her affidavit to trigger exclusion under *Franks*).

As a result, defendant's objections are **OVERRULED**.

## IV. Conclusion

As the Court has considered defendant's pro se reply, defendant's motion to adopt defendant's pro se filing [Doc. 39] is **GRANTED**. For the reasons above, defendant's objections [Doc. 31] are **OVERRULED**, and the Court **ACCEPTS** and **ADOPTS** the R&R [Doc. 25] in whole and **DENIES** defendant's motion to suppress [Doc. 17].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE